UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OPTEUM FINANCIAL SERVICES,
LLC, f/k/a HOME STAR MORTGAGE
SERVICES, LLC and PETER
NORDEN,

        Plaintiffs,

v.                          CASE NO. 8:03-CV-355-T-17TBM

TODD A. KOLBE, et al.,

        Defendants.

_____/

ORDER

This cause is before the Court on:

Dkt. 178 Motion for Summary Judgment
Dkt. 179 Notice of Filing, Siegwald
           Affidavit, with Two Boxes
           of Exhibits, 1-203
Dkt. 207 Affidavit
Dkt. 208 Affidavit
Dkt. 209 Notice
Dkt. 212 Affidavit
Dkt. 213 Response - Adoption
Dkt. 214 Response - Adoption
Dkt. 215 Response - Kerber
Dkt. 216 Response - Kolbe
Dkt. 217 Notice - Exhibits
Dkt. 221 Notice - Transcript of
           Change of Plea Hearing
Dkt. 223 Response
Dkt. 224 Affidavit
Dkt. 225 Reply
Dkt. 232 Notice

The Court regrets the long delay in the disposition of this
pending motion, which was due to the demands of the Court's
criminal docket.

Case No. 8:03-CV-355-T-17TBM

The Second Amended Complaint (Dkt. 74) includes allegations
of a fraudulent scheme carried out by Defendants to defraud
Plaintiff Opteum Financial Services, LLC f/k/a Home Star Mortgage
Services, LLC, in a series of real estate transactions which took
place between September, 2001 and February, 2002.  Defendants
acquired and artificially inflated the value of certain real
properties, then sold the properties to other defendants who
acted as purchasers.  The transactions were financed by Home Star
mortgage loans based on the artificially inflated values.
Defendants directly and indirectly received the profits from the
Home Star mortgage loans.

In December, 2000, there were additional fraudulent
transactions involving mortgage loans obtained from Sovereign
Mortgage Corporation based on inflated appraisals of real
property, which were then sold to Plaintiff Opteum.

The Second Amended Complaint includes the following Counts:

| Count I | Violation of 18 U.S.C. Sec. 1962(c)<br>RICO<br>T. Kolbe, McVey, Bolan, Team Title, Parodo,<br>Abercrombie |
|---|---|
| Count II | Violation of 18 U.S.C. Sec. 1962(d)<br>RICO Conspiracy<br>T. Kolbe, McVey, Bolan, Samelson, A. Kolbe,<br>Team Title, Parodo, Abercrombie, Kerber |
| Count III | Aiding and Abetting Violation of 18 U.S.C.<br>Sec. 1962(c) - RICO<br>Bolan, Samelson, A. Kolbe, Team Title,<br>Parodo, Abercrombie and Kerber |
| Count IV | Violation of Sec. 895.03, Fla. Stat.<br>Florida RICO<br>T. Kolbe, McVey, Bolan, Parodo, Team Title, |

2

Case No. 8:03-CV-355-T-17TBM

Abercrombie

Count V            Violation of Secs. 772.101 - 772.119, <u>Fla.</u>
                   <u>Stat</u>.
                   T. Kolbe, McVey, Bolan, Samelson, A. Kolbe,
                   Parodo, Team Title, Abercrombie

Count VI           Fraud
                   T. Kolbe, McVey, Bolan, Samelson, A. Kolbe,
                   Team Title, Parodo, Abercrombie, Kerber

Count VII          Constructive Fraud
                   T. Kolbe, McVey Bolan, Samelson, A. Kolbe,
                   Parodo, Team Title, Abercrombie, Kerber

Count VIII         Unjust Enrichment
                   T. Kolbe, McVey, Bolan, Samelson, A. Kolbe,
                   Team Title, Parodo, Abercrombie and Kerber

Count IX           Negligent Misrepresentation
                   T. Kolbe, McVey, Bolan, Samelson, A. Kolbe,
                   Team Title, Parodo, Abercrombie, Kerber

Count X            Fraud
                   T. Kolbe, Abercrombie, J. Kolbe, K. Kolbe,
                   Kolbe Construction Services, Samelson

Count XI           Constructive Fraud
                   T. Kolbe, J. Kolbe, K. Kolbe, Kolbe
                   Construction Services and Samelson

Count XII          Unjust Enrichment
                   T. Kolbe, Abercrombie, J. Kolbe, K. Kolbe,
                   Kolbe Construction Services, Samelson

Count XIII         Negligent Misrepresentation
                   T. Kolbe, Abercrombie, J. Kolbe, K. Kolbe,
                   Kolbe Construction Services, Samelson

Count XIV          Misappropriation
                   T. Kolbe

Count XV           Conversion
                   T. Kolbe

3

Case No. 8:03-CV-355-T-17MSS

Count XVI       Breach of Contract
                T. Kolbe

Count XVII      Breach of Implied Covenant of Good Faith
                And Fair Dealing
                T. Kolbe

Count XVIII     Defamation
                T. Kolbe

Count XIX       Abuse of Process
                T. Kolbe, McVey, Samelson

I.  Motion for Summary Judgment

Plaintiff Opteum Financial Services, LLC f/k/a Home Star
Mortgage Services, LLC, ("Opteum") moves for entry of summary
judgment as to Defendants Todd Kolbe, Mary Bolan, Kirk McVey, Amy
Samelson, Aaron Kolbe, Kelly Abercrombie, Todd Kerber, and Kolbe
Construction Services, Inc.  Plaintiff moves for judgment as a
matter of law as to the federal and state RICO claims, under 18
U.S.C. Sec. 1962 (c), 18 U.S.C. Sec. 1962(d), Sec. 895.03, Fla.
Stat., as well as on the fraud, negligent misrepresentation,
conversion and unjust enrichment claims.

Plaintiff Peter Norden is a plaintiff in Count XVIII,
Defamation, and Count XIX, Abuse of Process.  These claims are
not addressed in the pending Motion for Summary Judgment.

Plaintiff Opteum requested oral argument, and the Court
heard oral argument on this case on April 27, 2006.

The Court notes that Defendants Taya Parodo and Team Title
Services, Inc. entered into a settlement agreement with
Plaintiffs, and were dismissed from this case (Dkts. 176, 177).

4

Case No. 8:03-CV-355-T-17MSS

II.  Judicial Notice

    The Court may take judicial notice of the Court's own records.  The Court takes judicial notice of the dockets of the following cases.

    In Case No. 8:04-CR-486-T-23MAP, U.S. v. Todd A. Kolbe, Kirk McVey and Amy Samelson, a superseding information (Dkt. 27) was filed, which included Count I, Conspiracy to Commit Bank Fraud, under 18 U.S.C. Sec. 371, and Count II, Conspiracy to Commit Mail Fraud and Wire Fraud, under 18 U.S.C. Sec. 371.  Defendant Todd A. Kolbe entered into a plea agreement as to Counts I and II (Dkt. 32).  Defendant Kirk McVey entered into a plea agreement as to Count II (Dkt. 33).  Defendant Amy Samelson-Kolbe entered into a plea agreement as to Count II (Dkt. 34).  Count II of the Superseding Information includes the fraudulent scheme which is at issue in this case.  As part of Defendant Amy Samelson's plea agreement, Aaron Kolbe was offered Pretrial Diversion. Defendants' plea agreements were accepted and Defendants have been sentenced.  In addition to a term of incarceration and supervised release as to each Defendant, the Court granted a joint and several award of restitution to Home Star, as follows: Defendant Todd A. Kolbe: $1,782,019.47; Defendant Kirk McVey: $747,147.53.; Defendant Amy Samelson: $488,636.10.   Forfeiture money judgments have also been entered: 1) Todd Kolbe - $1,387,019.47 (Dkt. 120); 2) Kirk McVey - $747,147.53 (Dkt. 117); 3) Amy Samelson-Kolbe - $488,636.10 (Dkt. 121).

    In Case No.  8:05-CR-342-T-24TGW, U.S. v. Kelly Abercrombie, Todd Kerber, Taya Parodo and Mary Bolan, the indictment includes Count I, Conspiracy to Commit Mail Fraud and Wire Fraud under 18 U.S.C. Sec. 371, Counts 2-11, Mail Fraud, under 18 U.S.C. Sec. 1341 and Counts 12-21, Wire Fraud, 18 U.S.C Sec. 1343.  Defendant

5

Kelly Abercrombie entered a plea agreement (Dkt. 82) as to Count
I. As part of the plea agreement Counts 2 through 21 were
dismissed, and Defendant Todd Kerber was to be offered Pretrial
Diversion. Defendant Abercrombie further agreed to the
forfeiture of real or personal assets traceable to the conduct in
Count I. The indictment was dismissed without prejudice as to
Defendant Todd Kerber, to permit Defendant Kerber to participate
in the Pretrial Diversion program. (Dkt. 94), and subject to a
Pretrial Diversion Agreement. Defendant Mary Bolan entered a
guilty plea as to Counts 1 through 21 of the Indictment (Dkt.
79), without a plea agreement. Defendant Taya Parodo entered a
guilty plea as to Counts 1 through 21 of the Indictment (Dkt.
87). Restitution in the amount of $1,782,019.47 is part of the
sentences of Defendants Abercrombie, Bolan and Parodo, jointly
and severally, and forfeiture judgments have been entered.

The Court also takes judicial notice of Case No. 8:05-CV-
1133-T-27TGW, Opteum Financial Services, LLC v. United General
Title Insurance Company, Norden Deposition (Dkt. 40).

III. Responses

Defendant Todd A. Kolbe has filed a response to Plaintiff's
Motion for Summary Judgment (Dkt. 216). Defendants Kelly
Abercrombie and Todd Kerber have adopted Defendant Todd Kolbe's
response (Dkt. 214). Defendants Kirk McVey, Amy Samelson-Kolbe,
Joseph Kolbe, Karen Kolbe and Kolbe Construction Services, Inc.
also have adopted Defendant Todd A. Kolbe's response.

As to the RICO claims, Defendants argue that Plaintiff
cannot establish the existence of an enterprise, the pattern of
activity, continuity, the threat of continuity, a substantial
time period, and commission of the predicate acts. Defendants

6

Case No. 8:03-CV-355-T-17MSS

argue that Plaintiff's knowledge of and acquiescence in the
alleged mail fraud and wire fraud precludes Plaintiff's
contentions of fraud.

     As to the state law claims of fraud and negligent
misrepresentation, Defendants argue that Plaintiff's knowledge of
and acquiescence in the allegedly fraudulent scheme means that
the elements of materiality and reliance cannot be met.
Defendants further argue that the allegedly negligent
misrepresentations were easily verifiable in the public record.
As to the claim of conversion, Defendants argue that Plaintiff's
consent precludes the claim for conversion.  As to unjust
enrichment, Defendants argue that Plaintiff's unclean hands
preclude the equitable claim of unjust enrichment.

IV.  Reply

     In the Reply, Plaintiff argues that the stipulated facts on
which the plea agreements of Todd A. Kolbe, Kirk McVey and Amy
Samelson-Kolbe are based (Dkt. 225, pp. 3-14) mirror the facts of
this case.  Plaintiff argues that the guilty pleas of Kolbe,
McVey and Samelson-Kolbe are admissions.  Plaintiff argues that
there is no genuine issue as to any material fact as to the
involvement of Todd A. Kolbe, Kirk McVey and Amy Samelson-Kolbe
in the fraudulent scheme, and therefore entry of summary judgment
in favor of Plaintiffs and against Todd Kolbe, Mary Bolan, Kirk
McVey, Amy Samelson-Kolbe, Aaron Kolbe, Kelly Abercrombie, Todd
Kerber and Kolbe Construction Services, Inc., is appropriate.

V.  Standard of Review

     Summary judgment is warranted under Rule 56 of the Federal
Rules of Civil Procedure when, drawing all inferences in favor of

Case No. 8:03-CV-355-T-17MSS

the non-moving party, there is no genuine issue of material fact
and the movant is entitled to judgment as a matter of law.  See
Fed.R.Civ.P. 56.  A district court should grant summary judgment
"if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact, and...the
moving party is entitled to judgment as a matter of law.  Jones
v. Firestone Tire and Rubber Co., 977 F.2d 527, 535 (11th Cir.
1992).

     Substantive law guides the determination of which facts are
material and which are...irrelevant.  See Anderson v. Liberty
Lobby, Inc.. 477 U.S. 242, 248 (1986).  All reasonable doubts
about the facts and all justifiable inferences are resolved in
favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2
F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  See Anderson, 477 U.S. at 248.  But if
the evidence is merely colorable...or is not significantly
probative...summary judgment may be granted.  Id., at 249-
50(citations omitted).

     The moving party always bears the initial burden of
identifying evidence that demonstrates the absence of a genuine
issue of material fact.  Once that burden has been met, the non-
moving party must set forth "specific facts showing that there is
a genuine issue for trial," or the factual record will be taken
as presented by the moving party and judgment will be entered as
a matter of law.  Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574 (1986).  The non-movant must "do more
than show that there is some metaphysical doubt as to the
material facts."  Id at 586.  If the moving party bears the burden
of proof at trial, it can meet its initial burden by coming

8

Case No. 8:03-CV-355-T-17MSS

forward with positive evidence demonstrating the absence of a
genuine issue of material fact; i.e. facts "that would entitle it
to a directed verdict if not controverted at trial."
Fitzpatrick, 2 F.3d at 1115.

VI.   Facts

     The claims in this case are based on a fraudulent mortgage
scheme involving twenty-five real estate transactions in which
properties were purchased and simultaneously "flipped" for
artificially-inflated prices, designed to induce Plaintiff to
extend mortgage loans based on the inflated prices, and the
subsequent foreclosure of mortgage loans, resulting in losses to
Plaintiff ("Lakewood loans").  The overall scheme also includes
three transactions in which three mortgage loans based on
inflated appraisals were obtained from Sovereign Mortgage in
December, 2000, and then sold to Plaintiff Opteum ("Sovereign
loans").

A.   Todd A. Kolbe, Kirk McVey, Amy Samelson, Kelly Abercrombie,
Mary Bolan

     The Court incorporates the stipulated factual basis for the
plea agreements of Todd Kolbe, Kirk McVey, Amy Samelson-Kolbe,
and Kelly Abercrombie.  Defendant Bolan entered a guilty plea
without a plea agreement.  The Court notes that the stipulated
facts are included in Plaintiffs' Motion.  The Court will address
the claims against Defendant Todd Kerber, Defendant Aaron Kolbe
and Defendant Kolbe Construction Services, Inc. separately.

Case No. 8:03-CV-355-T-17MSS

Each plea agreement contains an integration clause:

> "This plea agreement constitutes the entire
> agreement between the government and the
> defendant with respect to the aforementioned
> guilty plea and no other promises,
> agreements, or representations exist or have
> been made to the defendant or defendant's
> attorney with regard to such guilty plea."

Each plea agreement also contains a certification clause
which states:    "The defendant and defendant's counsel certify
that this plea agreement has been read in its entirety (or has
been read to) the defendant and that defendant fully understands
its terms."

The Court has attached a chart of the twenty-five real
estate transactions at issue in this case, which is incorporated
by reference.

B.    Collateral Estoppel

Collateral estoppel precludes a party from relitigating an
issue of fact or law that was fully litigated in a previous
action.  Collateral estoppel requires: 1) the issue at stake must
be identical to the one involved in the prior litigation; 2) the
issue must have been actually litigated in the prior litigation,
and 3) the determination of the issue in the prior litigation was
a critical and necessary part of the judgment in the earlier
action.   Deweese v. Town of Palm Beach, 688 F.2d 731 (11th Cir.
1982).  Collateral estoppel can be applied only where a party has
had a full and fair opportunity to litigate the issue in the
earlier proceeding.   See EEOC v. Pemco Aeroplex, Inc., 383 F.3d

10

Case No. 8:03-CV-355-T-17MSS

1280 (11th Cir. 2004).

The award of restitution to crime victims is mandatory for
certain types of crimes, including the ones involved in the
criminal cases here, such as conspiracy to commit mail fraud and
wire fraud.  See 18 U.S.C. Sec. 3663A.

The Court notes that final judgments in the criminal cases
against Defendants Todd Kolbe, Mary Bolan, Kirk McVey, Amy
Samelson, and Kelly Abercrombie include the award of restitution
to Home Star Mortgage Services, LLC (now known as Opteum
Financial Services LLC), due from Defendants jointly and
severally, pursuant to the Mandatory Restitution to Victims Act,
18 U.S.C. 3663A, which is enforced under 18 U.S.C. Sec. 3664.  18
U.S.C. Sec. 3664, Procedure for Issuance and Enforcement of Order
of Restitution, provides that:

> (1) A conviction of a defendant for an
> offense involving the act giving rise to an
> order of restitution shall estop the
> defendant from denying the essential
> allegations of that offense in any subsequent
> Federal civil proceeding or State civil
> proceeding, to the extent consistent with
> state law, brought by the victim.

18 U.S.C. Sec. 3664(1).

18 U.S.C. Sec. 3664(h) provides:

> (H) If the court finds that more than 1
> defendant has contributed to the loss of a
> victim, the court may make each defendant
> liable for payment of the full amount of
> restitution or may apportion liability among
> the defendants to reflect the level of
> contribution to the victim's loss and
> economic circumstances of each defendant.

11

Case No. 8:03-CV-355-T-17MSS

In order to award restitution for scheme-based offenses, the Court must determine the scope of the conspiracy, and then must determine the amount of the loss directly and proximately caused by the co-conspirators.   In the related criminal cases, Defendants admitted some facts of the conspiracy, and had the opportunity to contest the scope of the conspiracy and whether each Defendant's acts were within the scope of the conspiracy. In Case No. 8:05-CR-342-T-24TGW, USA v. Kelly Abercrombie, Defendant Abercrombie argued that: 1) there were two separate conspiracies (Lakewood and Sovereign); and 2) Defendant Abercrombie's acts within the scope of the conspiracy did not cause the losses to the victim (Dkt. 106, Dkt. 113).   The Court further notes that, at the evidentiary sentencing hearing of Defendant Abercrombie, Defendant Todd A. Kolbe testified under oath that the denials of many factual allegations of the Second Amended Complaint in his Answer filed in Case No. 8:03-CV-355-T-17TBM, were lies. (Dkt. 113, Transcript, pp. 205-223).   In the criminal cases, the Court in necessarily determined the scope of the conspiracy.

As to the amount of the loss to the victim, the Probation Office is required to investigate and report to the Court the amount of the victim's loss prior to sentencing.   The Government must establish the amount of the loss directly and proximately caused by the acts of the co-conspirators by a preponderance of the evidence.   Evidentiary proceedings were conducted at the time of sentencing to determine the amount of the loss to the victim. (Case No. 8:04-CR-486-T-23MAP, Dkts. 88, 91, 108); Case No. 8:05-CR-342-T-24TGW, Dkts. 106, 113, 124).   Each Defendant had the opportunity to contest the amount of the loss to the victim of the conspiracy, Home Star Mortgage Services, LLC.

12

Case No. 8:03-CV-355-T-17MSS

The facts underlying the claims asserted in Case No. 8:03-CV-355-T-17TBM are the same facts which underlie the criminal charges against the above Defendants.  Only those losses directly and proximately caused by Defendants may be included in the award of restitution; the restitution award may not include compensatory damages.  In pursuing this civil case, Plaintiff Opteum Financial f/k/a Home Star Mortgage Services seeks to recover compensatory damages for Plaintiff's losses caused by the scheme, including treble damages, and the award of attorney's fees and costs.   After consideration, the Court finds that collateral estoppel bars Defendants Todd A. Kolbe, Kirk McVey, Mary Bolan, Amy Samelson and Kelly Abercrombie from relitigating the facts.   There is no genuine issue as to any material fact as to Defendants Todd A. Kolbe, Kirk McVey, Mary Bolan, Amy Samelson and Kelly Abercrombie.   The question is whether based on the undisputed facts Plaintiff Opteum is entitled to judgment as a matter of law.

C.    Count I - Title 18 U.S.C. Sec. 1962(c) (RICO)

Title 18 U.S.C. Sec. 1962(c) provides that:

> It shall be unlawful for any person employed
> by or associated with any enterprise engaged
> in, or the activities of which affect,
> interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the
> conduct of such enterprise's affairs through
> a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. Sec. 1962(c).

Case No. 8:03-CV-355-T-17MSS

    In order to prove a claim under federal RICO, a plaintiff
must demonstrate:

> 1) the existence of a RICO enterprise;
> 2) the existence of a pattern of
> racketeering;
> 3) a nexus between the defendant, the pattern
> of racketeering activity or the RICO
> enterprise; and
> 4) resulting injury to the plaintiff, in his
> business or property.

See Jackson v. Bellsouth Telecommunications, 372 F.3d 1250, 1264

(11th Cir. 2004).

1.   Enterprise

    Plaintiff argues that the undisputed facts show that between
August 3, 2001 and February 15, 2002, Todd Kolbe, acting through
Lakewood Properties, Lakewood Partnership and NXCSS, worked in
various combinations with Kelly Abercrombie, Taya Parodo, Team
Title, Mary Bolan, Kirk McVey, Amy Samelson-Kolbe, Aaron Kolbe,
and Todd Kerber, through fraudulent means, to induce Home Star to
extend mortgage loans well in excess of the actual value of the
collateral property to the RICO Defendants.  Plaintiff argues
that each RICO Defendant performed a significant function as to
the Lakewood Enterprise.  Todd Kolbe was able to shepherd the
fraudulent transactions through Home Star's procedures without
arousing suspicion.  Taya Parodo and Team Title closed each of
the transactions, arranging the timing of the transactions such
that the proceeds of the mortgage for the B-side of the
transactions could be used to fund the purchase of the A-side of
the transaction.  Parodo and Team Title also ensured that the
proceeds of the mortgage in excess of the actual value of the
collateral property would be siphoned to Todd Kolbe through the

14

Case No. 8:03-CV-355-T-17MSS

Lakewood Enterprise.  Defendants McVey, Samelson-Kolbe, Aaron
Kolbe and Todd Kerber each submitted mortgage loan applications
containing fraudulent misrepresentations to Home Star with the
intention of inducing Home Star to extend mortgage loans to them.
Defendants McVey, Samelson-Kolbe, Aaron Kolbe and Todd Kerber
also signed the documentation, knowing that the information
contained therein was purposely false and intended to induce Home
Star to make the mortgage loans.

     Plaintiff Opteum argues that the RICO Defendants have not
alleged any facts or come forward with any evidence that dispels
the existence of the Lakewood Enterprise.  Plaintiff argues that
each Defendant asserted the Fifth Amendment to every question
posed to each Defendant in depositions, and in response to
requests for admissions propounded to each Defendant.  Plaintiff
contends that Todd Kolbe, Kirk McVey, Amy Samelson-Kolbe, Aaron
Kolbe, Kelly Abercrombie and Todd Kerber were questioned in
deposition about the allegations of the Second Amended Complaint,
and each asserted his or her Fifth Amendment right against self-
incrimination.

     Plaintiff further argues that Defendants were questioned
during deposition about Plaintiff's written discovery, and
Defendants' responses to Interrogatories and Requests for
Admission.  Each Defendant asserted his or her Fifth Amendment
right.

     Plaintiff further argues that Defendants were questioned
during deposition about the loan transactions at issue, and the
documents associated with those loan transactions.  Defendants
Todd Kolbe, Kirk McVey, Amy Samelson Kolbe, Aaron Kolbe, Kelly

15

Case No. 8:03-CV-355-T-17MSS

Abercrombie and Todd Kerber each asserted his or her Fifth
Amendment right against self incrimination.

Under RICO, an enterprise "includes any individual,
partnership, corporation, association, or other legal entity, and
any union or group of individuals associated in fact although not
a legal entity."  18 U.S.C. Sec. 1961(4).  "The existence of an
enterprise is proved by evidence of an ongoing organization,
formal or informal, and by evidence that the various associates
function as a continuing unit."  See Lockheed Martin Corp. v.
Boeing Co., 314 F.Supp.2d 1198, 1209 (M.D. Fla. 2004).

2.  Pattern of Racketeering Activity and Nexus to Defendants

A "pattern of racketeering" requires at least two acts of
racketeering activity, one of which occurred after the effective
date of the chapter and the last of which occurred within ten
years ...after the commission of a prior act of racketeering
activity.  Florida Software Systems, Inc. v. Columbia/HCA
Healthcare Corp., 46 F.Supp.2d at 1294.  "Racketeering activity"
is defined as including any act which is indictable under a
lengthy list of criminal offenses, including the federal statutes
prohibiting mail and wire fraud.  See 18 U.S.C. Sec. 1961(1).
"Mail or wire fraud occurs when a person: 1) intentionally
participates in a scheme to defraud another of money or property
and 2) uses the mails or wires in furtherance of that scheme."
Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991).
Under the mail and wire fraud statutes, a plaintiff must prove a
scheme to defraud wherein "some type of deceptive conduct
occurred."  Id., 921 F.2d at 1500.

16

Case No. 8:03-CV-355-T-17MSS

The Court must find "related acts," criminal conduct which forms a pattern, and the criminal acts must have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise be interrelated by distinguishing characteristics that are not isolated events." Colonial Penn Ins. Co. v. Value Rent-a-Car, Inc., 814 F.Supp. 1084, 1093 (S.D. Fla. 1992). See also HJ, Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).

The Court must also establish the "continuity requirement." Colonial Penn at 1094. Continuity is established "by proving a series of related predicate acts over a substantial period of time. Otherwise, it must be shown that the predicate acts establish a threat of long-term racketeering activity." Id.

Plaintiff argues that there was a complex pattern of racketeering activity interwoven with twenty-five real estate transactions that took place over the six month period between August, 2001 and February, 2002, documented by the Siegwald Affidavit (Dkt. 179). Plaintiff further argues that the record evidence establishes that the fraudulent scheme Defendant Todd Kolbe and the RICO Defendants orchestrated involved twenty-five real estate transactions involving various combinations of the same Defendants, over a six-month time frame.

Plaintiff contends the evidence establishes that the fraud existed and continued for a substantial period of time. See Banco de Desarrollo Agropecuario, S.A. v. Gibbs, 640 F.Supp. 1168 (S.D. Fla. 1986)(three year period satisfies continuity requirement). The Eleventh Circuit Court of Appeals has held that a substantial amount of time, for the purposes of finding

17

Case No. 8:03-CV-355-T-17MSS

the presence of a RICO scheme, means more than a few weeks or months. See Jackson v. Bellsouth Telecommunications, Inc., supra.

"Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." HJ, Inc., 492 U.S. at 241. A party may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. HJ, Inc. 492 U.S. at 242. To otherwise meet the continuity requirement, a party must establish that the predicate offenses are an ongoing entity's regular way of doing business, including whether the predicate acts can be attributed to a defendant operating as part of a long term association that exists for criminal purposes, or that the racketeering acts themselves include a specific act of repetition extending indefinitely into the future. See HJ, Inc. at 242-243; Lugo v. State, 845 So.2d 74 (Fla. 2005)(six month time frame sufficient where threat of continuity established).

Defendant Todd A. Kolbe was able to carry out the fraudulent scheme through his position as a Regional Manager of Home Star. Since Todd A. Kolbe's employment was terminated in March, 2002, there is no "on-going entity" and therefore no threat of repetition involved. The undisputed facts do not support a finding of "open-ended" continuity.

The Court notes that the predicate acts of mail fraud and wire fraud alleged in the Second Amended Complaint span August 27, 2001 through January 13, 2001 (Dkt. 74, pp. 19-20). A six-month period of time is not a substantial amount of time

18